George G. HARDIE, Kard King, Inc., and Park Place Associates, Ltd., Plaintiffs–Appellees,

v.

UNITED STATES, Defendant–Appellant.

Nos. 04–5026, 04–5035.

United States Court of Appeals, Federal Circuit.

DECIDED: May 10, 2004.

Christopher H. Buckley, Jr., Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for plaintiffs-appellees. With him on the brief were Daniel W. Nelson and Thomas H. Dupree, Jr.

Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General; and David M. Cohen, Director. Of counsel was Lucille C. Roberts, United States Marshals Office, United States Department of Justice, of Washington, DC.

Before MAYER, Chief Judge, LOURIE and LINN, Circuit Judges.

MAYER, Chief Judge.

The United States appeals the order of the United States Court of Federal Claims denying its motion to enjoin an arbitration proceeding addressing the contract claims of plaintiffs-appellees George G. Hardie, Kard King, Inc., and Park Place Associates, Ltd. (collectively, "PPA"), the same claims now before the Court of Federal Claims. *Hardie v. United States,* No. 99–890C (Fed.Cl. Nov. 14, 2003) [*Hardie III*]. Because we lack jurisdiction to hear this appeal, we dismiss.

*Background*

This is the second appeal arising from a case still before the Court of Federal Claims, *Hardie v. United States,* No. 99–890C [*Hardie I*]. In the first appeal, *Hardie v. United States,* 19 Fed.Appx. 899 (Fed.Cir.2001) [*Hardie II*], we provided the circumstances surrounding the contract dispute before the Court of Federal Claims, which we summarize here briefly.

On December 5, 1983, PPA, a California limited partnership, entered into a joint venture agreement with LCP Associates ("LCP") to organize, own, and operate a legal card-playing club. The club generated income by renting its space to card players and by providing expert card dealers. LCP and PPA enjoyed several years of operation and several million dollars in after-tax profits before the government acquired LCP's general partnership interest in the enterprise by virtue of forfeiture proceedings conducted against LCP under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Because PPA was innocent of any criminal activity that led to the formation of the enterprise, it retained its partnership interest.

The United States kept its share of the enterprise, and in the nine years following the forfeiture, the government received more than $30 million in partnership distributions. The government also selected individuals to manage the club and enter into contracts to keep the club operational. During the government's operational involvement in the club, however, it allegedly failed to meet its obligations to its partner under the terms of the joint venture agreement. This purportedly resulted in damages to PPA in excess of $150 million. PPA ultimately filed a contract claim with the Court of Federal Claims, which dismissed the suit for lack of subject matter jurisdiction.

In vacating the judgment of the Court of Federal Claims, we stated that it had jurisdiction under the Tucker Act to adjudicate PPA's contract claim. Even though the United States was not an original party to the joint venture agreement, it assumed the obligations of the original party, LCP, when it received that party's interest, retained it for the several years follow-

ing forfeiture, and "conducted its business in a decidedly nonpublic and nongeneral manner." We consequently remanded the case to the Court of Federal Claims for further proceedings.

Events that have transpired since that appeal bring us to the matter now before us. On June 16, 2003, on the eve of the government's expected submission of a motion for summary judgment with respect to all of plaintiffs' claims, PPA filed for arbitration against the United States in Los Angeles, California, pursuant to the arbitration clause contained in the joint venture agreement. *Hardie III* at 1–2. The United States filed its objection to PPA's arbitration demand with the arbitration panel, stating, "Because the United States is not a party to the Joint Venture Agreement, the United States is not subject to the jurisdiction of [the] arbitrators in this matter." The panel overruled this objection, concluded that the arbitration would proceed absent a stay order, and promulgated a scheduling order on October 1, 2003.

Prior to the panel's decision to move forward with the arbitration proceeding, the United States moved in the Court of Federal Claims to enjoin the arbitration. As of the date of the panel's scheduling order, however, the Court of Federal Claims had yet to rule on the government's motion. On October 2, 2003, the United States "filed an 'emergency' motion to expedite the ruling ... because discovery had begun, and depositions were scheduled to commence th[at] month." *Id.* at 3. Meanwhile, PPA moved for a stay of the judicial proceedings pending the conclusion of the arbitration. The Court of Federal Claims ultimately denied both motions, citing "its lack of subject-matter jurisdiction to compel, arrest, or enforce arbitration." *Id.* at 12.

## Discussion

■ On December 4, 2003, the United States filed a motion in this court for an injunction pending its interlocutory appeal of the Court of Federal Claims's decision. PPA responded and then filed a motion to dismiss for lack of jurisdiction. The motions panel of this court denied the government's motion for an injunction pending appeal, and it deferred to us PPA's motion to dismiss because the government's "arguments that it cannot be subject to arbitration are intertwined with the jurisdictional issues raised by [PPA] in its motion...." *Hardie v. United States,* Nos. 04–5026, –5035 (Fed.Cir. Dec. 12, 2003). Because a "court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits," we turn first to that issue. *PIN/NIP, Inc. v. Platte Chem. Co.,* 304 F.3d 1235, 1241 (Fed.Cir.2002) (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997)).

PPA asserts that we lack jurisdiction to hear this appeal because it is barred by the plain language of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(b)(4), which prohibits appeals "taken from an interlocutory order refusing to enjoin an arbitration that is subject to this title." The government contends that jurisdiction is proper for two reasons. First, section 16 does not apply because the arbitration at issue is not subject to the relevant title. Second, the collateral order doctrine bestows jurisdiction. Both arguments are unavailing.

■ The government contends that 9 U.S.C. § 16(b)(4) does not apply to this arbitration because the United States did not waive its sovereign immunity as to binding arbitration in accordance with the

Administrative Dispute Resolution Act ("ADRA"). But in *Hardie II*, we stated unequivocally that the United States was bound by the terms of the joint venture agreement under "the law applicable to contracts between private individuals" because it had "elected to step into the shoes of the general partner of LCP, and PPA had no choice but to accept its new 'partner.'" Furthermore, the arbitration clause was part and parcel of the joint venture agreement, and "[a]rbitration agreements are properly viewed as contractual arrangements for resolving disputes." Consequently, the United States is subject to the arbitration clause of the joint venture agreement just as any private party would be. The plain language of 9 U.S.C. § 16(b)(4) applies.

■■■ The same reasoning also thwarts the government's contention that the collateral order doctrine confers jurisdiction. Under that doctrine, "an order must at a minimum satisfy three conditions: It must 'conclusively determine the disputed question,' 'resolve an important issue completely separate from the merits of the action,' and 'be effectively unreviewable on appeal from a final judgment.'" *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 431, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). In an effort to meet the second criterion, the government frames the issue as whether the United States has preserved its immunity from binding arbitration despite its waiver of sovereign immunity as to the breach of contract claims. Under the law of this case, that distinction is artificial. *See Suel v. Sec'y of HHS*, 192 F.3d 981, 985 (Fed. Cir.1999) ("Under law of the case, [ ] a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation."). We have already decided that arbitration is a "contractual arrangement" and that the United States is bound by the contractual arrangements contained within the joint venture agreement. The government therefore cannot meet at least one of the three conditions necessary to invoke the collateral order doctrine.

*Conclusion*

Accordingly, since section 16(b)(4) precludes appeals from an interlocutory order refusing to enjoin an arbitration that is subject to this title, the government's appeal is dismissed for lack of jurisdiction.

*DISMISSED.*